**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CIVIL ACTION NO. 7:18-CV-33-D**

BLACKROCK ENGINEERS, INC.,     )
                                       )
            Plaintiff,         )
                                       )
      v.                      )
                                     )
DUKE ENERGY PROGRESS, LLC, and   )
AMEC FOSTER WHEELER              )
ENVIRONMENT & INFRASTRUCTURE,   )
INC.,                                     )
            Defendants.      )

**MEMORANDUM IN SUPPORT OF DUKE ENERGY PROGRESS, LLC'S
MOTION FOR SANCTIONS PURSUANT TO
<u>FEDERAL RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS</u>**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS ............................................................................................................... 2

    A.   Duke Energy's Contractual Right to Copyright Ownership ................................ 2

    B.   BlackRock's First Suit Against Duke Energy ....................................... 4

    C.   BlackRock's Claim Splitting ................................................................ 5

III. ARGUMENT ...................................................................................................... 6

    A.   Legal Standards .................................................................................... 6

        1.   Legal Standards on a Motion for Sanctions Under Federal Rule 11 ......... 6

        2.   Legal Standards on a Motion for Sanctions Under 28 U.S.C. § 1927 ..................................................................................................... 8

        3.   Legal Standards on a Motion for Sanctions Under the Court's Inherent Power to Issue Sanctions ............................................................ 8

    B.   BlackRock and Its Attorneys Knowingly and Impermissibly Split Claims. ....... 10

        1.   BlackRock and Its Attorneys Knowingly and Impermissibly Split Its Fraud and Negligent Misrepresentation Claims. ............................... 11

        2.   BlackRock and Its Attorneys Knowingly and Impermissibly Split Its Copyright Claims. ............................................................... 14

        3.   Sanctions Should be Imposed for the Split Claims Pursuant to Rule 11(b)(2), 28 U.S.C. § 1927, And The Court's Inherent Powers. ............. 18

    C.   BlackRock and Its Attorneys Knowingly Presented Claims that are Time-Barred. ....................................................................................... 21

        1.   BlackRock's Claims for Fraud and Negligent Misrepresentation are Wholly Time-Barred. ..................................................................... 21

        2.   BlackRock's Claim for Copyright Is Partially Time-Barred. ................... 23

        3.   Sanctions Should be Imposed for the Time-Barred Claims Pursuant to Rule 11(b)(2), 28 U.S.C. § 1927, And The Court's Inherent Powers. ...................................................................................... 25

    D.   Blackrock Has No Standing To Bring Any Copyright Infringement Claim. ....... 25

        1.   Blackrock does not have Standing to Bring Suit, as it is not the Exclusive Owner of the Copyrights. ...................................................... 25

        2.   Sanctions Should be Imposed for the Copyright Infringement Claims Pursuant to Rule 11(b)(2), 28 U.S.C. § 1927, and the Court's Inherent Powers. ..................................................................... 28

IV.  CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aldmyr Sys., Inc. v. Friedman*,
  215 F. Supp. 3d 440 (D. Md. 2016), *aff'd*, 679 F. App'x 254 (4th Cir. 2017),
  *cert. denied*, 138 S. Ct. 321, 199 L. Ed. 2d 209 (2017) ...................................................8, 19, 28

*Armento v. Laser Image, Inc.*,
  950 F. Supp. 719 (W.D.N.C. 1996) .......................................................................................26

*Barefoot v. Polk*,
  No. 5:07-CT-3029-D, 2011 WL 1542084 (E.D.N.C. Apr. 21, 2011) ....................................12, 17

*BlackRock Engineers, Inc. v. Duke Energy Progress, LLC*,
  Case No. 7:15-CV-00250-D (E.D.N.C.)............................................................................ *passim*

*Blair v. Shenandoah Women's Ctr., Inc.*,
  757 F.2d 1435 (4th Cir. 1985) ............................................................................................8, 19

*Brubaker v. City of Richmond*,
  943 F.2d 1363 (4th Cir. 1991) ..............................................................................7, 21, 22, 25

*Burger-Moss v. Steinman*,
  127 F.R.D. 452 (S.D.N.Y. 1989) ...........................................................................................27

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
  498 U.S. 533 (1991)..................................................................................................................7

*CACI Int'l, Inc. v. Pentagen Techs. Int'l, Ltd.*,
  Nos. 94-2058, 94-2220, 1995 WL 679952 (4th Cir. Nov. 16, 1995) .....................................23

*Carlton v. Jolly*,
  125 F.R.D. 423 (E.D. Va. 1989) .........................................................................................8, 22

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..................................................................................................................8, 9

*Chaudhry v. Gallerizzo*,
  174 F.3d 394 (4th Cir. 1999) ..................................................................................7, 19, 28

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)..................................................................................................................7

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000)...................................................................................................11

ii

*Fahrenz v. Meadow Farm P'ship*,
    850 F.2d 207 (4th Cir. 1988) ...........................................................................28

*Forshaw Indus., Inc. v. Insurco, Ltd.*,
    2 F. Supp. 3d 772 (W.D.N.C. 2014) .................................................................22

*Fred A. Smith Lumber Co. v. Edidin*,
    845 F.2d 750 (7th Cir. 1988) ...........................................................................21

*Giganti v. Gen-X Strategies, Inc.*,
    222 F.R.D. 299 (E.D. Va. 2004) .............................................................8, 19, 28

*GO Comput. Inc. v. Microsoft Corp.*,
    437 F. Supp. 2d 497 (D. Md. 2006) ..................................................................28

*Iconbazaar, L.L.C. v. Am. Online, Inc.*,
    308 F. Supp. 2d 630 (M.D.N.C. 2004) ..............................................................18

*In re Johnson*,
    186 F. App'x 390 (4th Cir. 2006) .................................................................7, 19

*Kirby v. Gen. Elec. Co.*,
    210 F.R.D. 180 (W.D.N.C. 2000) .......................................................................7

*In re Kunstler*,
    914 F.2d 505 (4th Cir. 1990) .......................................................................8, 28

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................................25

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
    243 F.3d 789 (4th Cir. 2001) ...........................................................................23

*Myers v. Colgate–Palmolive Co.*,
    102 F. Supp. 2d 1208 (D. Kan. 2000) .....................................................10, 11, 14

*Nardi v. Cincinnati Ins. Co.*,
    134 F.3d 363 (4th Cir. 1998) ...........................................................................27

*Nash Cty. Bd. of Educ. v. Biltmore Co.*,
    640 F.2d 484 (4th Cir.1981) .............................................................................10

*Nutter v. Clear Channel Commc'ns, Inc.*,
    No. 505CV65, 2006 WL 2792903 (N.D. W. Va. Sept. 26, 2006) .........................26

*Performance Sales & Mktg. LLC v. Lowe's Cos.*,
    No. 5:07-CV-00140-RLV, 2012 WL 4061680 (W.D.N.C. Sept. 14, 2012) ...........18

*Pittston Co. v. United States*,
 199 F.3d 694 (4th Cir. 1999) ............................................................................12

*Projects Mgmt. Co. v. Dyncorp Int'l LLC*,
 734 F.3d 366 (4th Cir. 2013) ..............................................................................9

*Rentz v. Dynasty Apparel Indus., Inc.*,
 556 F.3d 389 (6th Cir. 2009) ..............................................................................9

*Robinson v. Double R Records*,
 No. 04-4120, 2007 WL 2049724 (S.D.N.Y. July 16, 2007)....................................27

*Rousseau v. Howard Cty., Md.*,
 No. JFM-09-CV-1079, 2009 WL 4018551 (D. Md. Nov. 19, 2009), *aff'd on
 other grounds*, 425 F. App'x 193 (4th Cir. 2011)..................................................11

*In re Sargent*,
 136 F.3d 349 (4th Cir. 1998) ...............................................................................7

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*,
 273 F. App'x 256 (4th Cir. 2008) ..........................................................10, 11, 14, 19

*Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*,
 452 F. Supp. 2d 621 (D. Md. 2006) ...........................................................10, 11, 16

*Smith & Johnson, Inc. v. Hedaya Home Fashions Inc.*,
 No. 96-5821, 1996 WL 737194 (S.D.N.Y. Dec. 26, 1996), *aff'd*, 125 F.3d 844
 (2d Cir. 1997)...................................................................................................27

*Smith v. Bank of Stanly*,
 No. 1:09CV951, 2014 WL 5034732 (M.D.N.C. Oct. 8, 2014) ...............................9

*Strag v. Bd. of Trustees, Craven Cmty. Coll.*,
 55 F.3d 943 (4th Cir. 1995) ...............................................................................9

*Superior Performers, Inc. v. Family First Life, LLC*,
 No. 1:14CV382, 2015 WL 471389 (M.D.N.C. Feb. 4, 2015) ..........................10, 19

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
 203 F. Supp. 3d 608 (M.D.N.C. 2016) ..........................................................21, 22

*Trustmark Ins. Co. v. ESLU, Inc.*,
 299 F.3d 1265 (11th Cir. 2002) ..........................................................................11

*United States v. Shaffer Equip. Co.*,
 11 F.3d 450 (4th Cir. 1993) ................................................................................9

iv

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977)...........................................................................11, 14

*Williams v. Family Dollar Servs., Inc.*,
    327 F. Supp. 2d 582 (E.D. Va. 2004) .................................................................8

**Federal Statutes**

17 U.S.C. § 101 .................................................................................................26

17 U.S.C. § 201(b) .............................................................................................26

17 U.S.C. § 501(b) .............................................................................................26

17 U.S.C. § 507(b) .............................................................................................23

28 U.S.C. § 1927 .......................................................................................... *passim*

**State Statutes**

N.C. Gen. Stat. §§ 1-52(5) and (9).....................................................................21

**Rules**

Fed. R. Civ. P. 11(b) ................................................................................6, 7, 19

Fed. R. Civ. P. 11(b)(2)........................................................................7, 9, 18, 25, 28

Fed. R. Civ. P. 11(b)(3)...........................................................................................7

Fed. R. Civ. P. 11(c)(2)........................................................................................2, 6

Local Civil Rule 40.3(b) ....................................................................................6, 19

Defendant Duke Energy Progress, LLC ("Duke Energy") respectfully submits this memorandum in support of its Motion For Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and/or the Court's inherent powers.

## I.    <u>INTRODUCTION</u>

For the second time, now in a different lawsuit, Plaintiff BlackRock Engineers, Inc. ("BlackRock") is claiming that Defendant Duke Energy Progress, LLC ("Duke Energy") has committed fraud and negligent misrepresentation in connection with the negotiation of a Master Contract (*i.e.*, the second contract between the parties) over six years ago.  And for the second time, BlackRock is contending that Duke Energy has infringed sixteen copyright registrations although Duke Energy has an ownership interest in those copyrights by virtue of BlackRock's assignment of its copyright interest to Duke Energy in an Individual Project Contract (*i.e.*, the first contract between the parties).  When BlackRock belatedly sought leave to add these claims to the first lawsuit against Duke Energy—based on information in BlackRock's possession well before it even filed the first lawsuit—the Court rejected BlackRock's attempt as untimely.  Less than a week after an unsuccessful mediation, BlackRock and its attorneys sought to circumvent that ruling by impermissibly asserting the same excluded claims in this second lawsuit in an attempt to gain undue leverage over Duke Energy.

This second lawsuit violates this Circuit's well-settled law against claim splitting and should be excluded on that basis alone.  The split claims are further sanctionable because they are based on allegations that are either time-barred or devoid of merit.  For example, BlackRock's claims for fraud and negligent misrepresentation are based on conduct that, *on the face of the Complaint itself*, occurred no later than the fall of 2014 and thus are time-barred under the applicable three-year statute of limitations.  Likewise, Blackrock's claim for copyright infringement includes time-barred allegations and is wholly without any basis in law or in fact, as

1

BlackRock claims ownership of drawings that are identical to, or derivative works of, drawings that *Duke Energy* owns under the parties' first contract that expressly and unequivocally assigned the intellectual property to Duke Energy. Under Fourth Circuit precedent, the Court may infer from the baselessness of BlackRock's claims that they have been asserted for the improper purposes of harassing Duke Energy, increasing the cost of litigation between the parties, and forcing Duke Energy into an unfavorable settlement in the first lawsuit.

Pursuant to Rule 11(c)(2), Duke Energy sent BlackRock a copy of this motion on May 10, 2018, demanding that BlackRock withdraw the frivolous claims at issue. Despite being given the 21-day "safe harbor," BlackRock has refused to do so. Therefore, the Court should issue sanctions against BlackRock and its attorneys by: (i) immediately dismissing BlackRock's frivolous Complaint with prejudice, and (ii) awarding Duke Energy its reasonable attorney's fees and costs incurred in defending against these baseless claims pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and/or the Court's inherent powers. Such sanctions are necessary to deter BlackRock from continuing to assert frivolous claims against Duke Energy and to punish BlackRock for its abusive and costly litigation practices.

## II.    FACTS

### A.    Duke Energy's Contractual Right to Copyright Ownership

Duke Energy owns and operates the Roxboro Lined Ash Monofill (the "Roxboro Landfill") located in Semora, Person County, North Carolina. In 1999, Duke Energy[1] developed a plan to transition the Roxboro Landfill from an unlined to a lined facility. Ex. A, CP&L Transition Plan 1999. Beginning in the year 2000, Carolina Power & Light, Duke Energy's predecessor-in-interest, contracted with Gary W. Ahlberg, P.E., BlackRock's predecessor-in-interest, to provide

---

[1] Unless otherwise indicated, the term "Duke Energy" refers to Defendant Duke Energy and its predecessors-in-interest.

landfill engineering services at the Roxboro Landfill. *See* Ex. B, 2018 Action, D.E. 1-4, Individual Project Contract. Under this Individual Project Contract (hereinafter "the First Contract"), BlackRock, in a collaborative effort with Duke Energy, designed the lined landfill to be constructed in six (6) phases and prepared technical drawings and text to obtain the requisite approval by the North Carolina Department of Environment and Natural Resources ("DENR") (now, after name change, the Department of Environmental Quality ("DEQ")) for the construction and operation of each phase of the Roxboro Landfill. Under Section 9 of the First Contract, as amended, any copyrightable material was deemed a "work for hire" under the Copyright Act, and BlackRock assigned all copyrights in any copyrightable materials produced thereunder to Duke Energy's predecessor-in-interest. *Id.* 9. BlackRock worked under and billed its services to the First Contract until the parties terminated that contract on or about August 7, 2013. Ex. C, 2018 Action, D.E. 1-10, Amendment 37 to First Contract.

In 2013, BlackRock and Duke Energy's predecessor-in-interest executed a Master Contract (hereinafter "the Second Contract"). Ex. D, 2018 Action, D.E. 1-8, Second Contract. But, by its terms, work could not begin under the Second Contract until the parties executed a work authorization. *See id.* § 5. That occurred on or about August 7, 2013, the same day the parties terminated the First Contract. *Id.*; Ex. C. On December 5, 2014, Duke Energy lawfully terminated the Second Contract by exercising the Termination for Convenience Clause. Ex. E, 2018 Action, D.E. 1-26, Termination Letter. Shortly thereafter, BlackRock contacted DEQ to retract its certification of the Phase 6A Construction Quality Assurance Report that included technical drawings that BlackRock had previously submitted to the agency for Phase 6 of the landfill on behalf of Duke Energy. The agency did not withdraw the certification, choosing instead to issue

Duke Energy a permit to operate Phase 6 of the Roxboro landfill on or about February 9, 2015.

Ex. F, Permit to Operate.

**B.**    **BlackRock's First Suit Against Duke Energy**

BlackRock has registered a total of nineteen purported copyrights for work it completed at the Roxboro Landfill while under contract with Duke Energy.   On or about August 2015, BlackRock applied for twelve copyright registrations for collaborative work at the Roxboro landfill.   On November 24, 2015, BlackRock filed its first lawsuit against Duke Energy in this Court, captioned *BlackRock Engineers, Inc. v. Duke Energy Progress, LLC*, Case No. 7:15-CV-00250-D (E.D.N.C.) (the "2015 Action").   BlackRock's Complaint in the 2015 Action implicates two of the initial twelve purported copyrights and principally asserts, among other things, claims for copyright infringement, based on Duke Energy's purported furnishing of certain engineering drawings to co-Defendant Amec Foster Wheeler Environment & Infrastructure, Inc. ("AMEC") to provide DEQ information and reports to obtain necessary approval for operation of the landfill. Ex. G, 2015 Action, D.E. 5, Complaint.

In the 2015 Action, Duke Energy asserted a counterclaim for fraud on the Copyright Office on the basis that BlackRock deliberately failed to disclose Duke Energy's ownership interest in the drawings or pre-existing versions of the drawings registered by BlackRock.   Ex. H, 2015 Action, D.E. 56-1, Proposed Amended Answer; Ex. I, 2015 Action, D.E. 75, Order.   Voluminous evidence has been produced in the 2015 Action demonstrating that Duke Energy, and not BlackRock, is the owner of the subject drawings and/or the pre-existing versions thereof.   This evidence includes, without limitation, the express language in the First Contract agreed to by the parties in 2000 which provides that "[a]ll reports, correspondence, documents, data, and other information relating to the Work are exclusively [Duke Energy's] property and are to be considered

as proprietary and confidential" and that "[BlackRock] assigns any copyright in any copyrightable material produced hereunder to [Duke Energy]." Ex. B at §§ 9, 26.

On or about August 2017, BlackRock applied for seven additional copyright registrations purporting to register computer-aided design ("CAD") files related to BlackRock's work at the Roxboro Landfill. Ex. J, 2018 Action, D.E. 1-3, CAD File Registration Applications. BlackRock purportedly completed the CAD files in 2013 or 2014. *Id*. On September 11, 2017, BlackRock sought leave to amend the Complaint to assert claims for fraud and negligent misrepresentation based on alleged statements during the negotiation of the Second Contract and a claim for copyright infringement based on the remaining seventeen purported copyrights. The Court denied BlackRock's motion on December 14, 2017, because, among other things, it was past the deadline set forth in the scheduling order, did not demonstrate good cause to amend the scheduling order, and would prejudice Duke Energy. Ex. I. BlackRock did not ask the Court to certify the order for interlocutory appeal.

## C. BlackRock's Claim Splitting

On February 21, 2018, the parties engaged in unsuccessful mediation. Five days later, BlackRock commenced the instant action (the "2018 Action"), alleging the same three causes of action that were excluded from the first case: copyright infringement, fraud, and negligent misrepresentation. Ex. K, 2018 Action, D.E. 1, Complaint. BlackRock's claim for copyright infringement in the 2018 Action is predicated on sixteen of the same purported copyrights that BlackRock tried, and failed, to add to the Complaint in the 2015 Action[2] and the same

---

[2] While BlackRock attempted to amend its Complaint in the 2015 Action to include seventeen additional copyright registrations, BlackRock has identified only sixteen of those seventeen copyright registrations as the basis for its copyright infringement claims in the instant action. Specifically, BlackRock has not identified copyright registration certificate number TX 8-159-243 in the 2018 Action. *Compare* Ex. L, 2015 Action, D.E. 61-2, Proposed Amended Complaint, ¶ 1 *with* Ex. K at ¶ 1. Duke Energy's arguments contained herein apply equally to the omitted copyright registration.

transactions—Duke Energy's purported furnishing of technical drawings to AMEC for submission of drawings to DEQ—at issue in that first Action. *See*, *e.g.*, *id.* ¶¶ 150-153. BlackRock's claims for fraud and negligent misrepresentation in the 2015 and 2018 Actions are both predicated on the allegation that Duke Energy's exercise of the "termination for Owner's convenience" clause in the Second Contract in the fall of 2014 contradicted Duke Energy's prior alleged statement in March 2012 that it would not enforce that clause against Blackrock. *Id.* ¶¶ 158-170, 176-180. BlackRock never filed a notice of related case to identify the relatedness between the 2015 and 2018 Actions as required by the Local Rules. *See* Local Civil Rule 40.3(b) (requiring the party to "promptly file . . . a notice identifying all cases pending in this district that are related to this case"). Instead, on March 22, 2018, this Court *sua sponte* reassigned the 2018 Action to ensure that Chief Judge Dever would preside over both the 2015 and 2018 Actions.

On May 10, 2018, pursuant to Federal Rule 11(c)(2), Duke Energy served a copy of the instant motion on BlackRock, notifying BlackRock that the claims in the 2018 Action are clearly impermissible and frivolous, and that it intended to file the motion for sanctions unless BlackRock dismissed the case with prejudice within 21 days thereof. Thompson Decl. ¶ 2. To date, BlackRock has refused to withdraw the Complaint in the 2018 Action.

## III. ARGUMENT

### A. Legal Standards

#### 1. Legal Standards on a Motion for Sanctions Under Federal Rule 11

Federal Rule 11(b) establishes that any attorney or party who signs a pleading must certify to the Court that such pleading "after an inquiry reasonable under the circumstances":

(1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation";

(2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law or for establishing new law"; [and]

> (3) "the factual contentions have evidentiary support or, if specifically so
> identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery[.]"

Fed. R. Civ. P. 11(b).

The Supreme Court has explained that "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts." *Cooter*, 496 U.S. at 393.

Rule 11 sanctions should be imposed if a reasonable inquiry would have disclosed that the pleading, motion, or other paper was not well-grounded in fact or law. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 550-51 (1991). A court employs an objective standard of reasonableness in assessing Rule 11 violations, and thus sanctions are appropriate where "it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" *In re Johnson*, 186 F. App'x 390, 394 (4th Cir. 2006) (citation omitted). "A legal contention is unjustified when 'a reasonable attorney would recognize [it] as frivolous.'" *Kirby v. Gen. Elec. Co.*, 210 F.R.D. 180, 189 (W.D.N.C. 2000) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)). Stated differently, a legal position violates Rule 11(b)(2) if it "has 'absolutely no chance of success under the existing precedent.'" *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). And a party violates Rule 11(b)(3) where there is no factual support for the asserted claim. *See*, *e.g.*, *id.*

Rule 11 sanctions may also be imposed if the pleading was filed with an improper purpose. "Fourth Circuit authority interpreting the Rule makes clear than an improper purpose may be inferred from a claim's lack of factual or legal foundation or other factors such as the timing of the filing of the complaint." *Giganti v. Gen-X Strategies, Inc*., 222 F.R.D. 299, 313 (E.D. Va. 2004) (citing *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990)); *see also Aldmyr Sys., Inc. v. Friedman*, 215 F. Supp. 3d 440, 468 (D. Md. 2016), *aff'd*, 679 F. App'x 254 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 321, 199 L. Ed. 2d 209 (2017) (Rule 11 sanctions warranted for defending against frivolous copyright infringement suit); *Carlton v. Jolly*, 125 F.R.D. 423 (E.D. Va. 1989) (Rule 11 sanctions warranted for defending against plaintiffs' fraud and negligent misrepresentation claims).

### 2. Legal Standards on a Motion for Sanctions Under 28 U.S.C. § 1927

Similarly, pursuant to 28 U.S.C. § 1927, a court may also sanction an attorney for improper litigation conduct that causes the opposing party to incur unnecessary expense. *See, e.g.*, *Blair v. Shenandoah Women's Ctr., Inc.*, 757 F.2d 1435, 1437-38 (4th Cir. 1985). Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "'Vexatious' conduct, by definition, 'involves either subjective or objective bad faith.'" *Williams v. Family Dollar Servs., Inc.*, 327 F. Supp. 2d 582, 585 (E.D. Va. 2004) (citation omitted).

### 3. Legal Standards on a Motion for Sanctions Under the Court's Inherent Power to Issue Sanctions

Courts are also inherently authorized with the power to issue sanctions. The Supreme Court has held that courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "A primary aspect of that discretion is the ability to fashion an

appropriate sanction for conduct which abuses the judicial process." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995) (emphasis added) (quoting *Chambers*, 501 U.S. at 43). These sanctions include dismissal and assessment of attorney's fees. *See id.*

In exercising its discretion under its inherent powers, the Court should consider the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that courts seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462-63 (4th Cir. 1993)). Although it is within the Court's discretion to sanction a party for its attorney's misconduct, it may instead impose sanctions on the attorney if the party played an "insubstantial role in the sanctionable conduct." *Smith v. Bank of Stanly*, No. 1:09CV951, 2014 WL 5034732, at *4-6 (M.D.N.C. Oct. 8, 2014) (citing *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 397-99 (6th Cir. 2009) (affirming district court's decision to sanction attorneys and not client for inclusion of unsupported statement of fact in memorandum opposing summary judgment, despite client's active participation in litigation)).

Under Federal Rule 11(b)(2), 28 U.S.C. § 1927, and the Court's inherent powers, sanctions against BlackRock are warranted. As more fully explained below, BlackRock's second lawsuit constitutes impermissible claim splitting, violates applicable statutes of limitations, and is devoid of standing. Consequently, this Court should order sanctions against BlackRock including dismissal of the 2018 Action and an award of costs and attorney's fees to Duke Energy.

9

**B.     BlackRock and Its Attorneys Knowingly and Impermissibly Split Claims.**

The rule against claim splitting, also known as the rule against duplicative litigation, "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) (quoting *Myers v. Colgate–Palmolive Co.*, 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000)). "The rule against claim splitting is one of the principles of res judicata." *Id.* at 264 (citing *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 490 (4th Cir.1981)). As the Middle District of North Carolina has explained, the rule against duplicative litigation or claim splitting is applicable when two suits are pending at the same time, whereas claim preclusion applies where the second suit is filed only after a first suit has already been adjudicated on the merits. *Superior Performers, Inc. v. Family First Life, LLC*, No. 1:14CV382, 2015 WL 471389, at *4 (M.D.N.C. Feb. 4, 2015) (citing *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 452 F. Supp. 2d 621, 626 n.2 (D. Md. 2006)); *see also Sensormatic*, 273 Fed. App'x at 265 ("Often, the rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit."). Both doctrines are intended to foster judicial economy (by requiring a party to join together in a single suit all related claims) and to protect defendants from vexatious and repetitive litigation over what is essentially the same subject matter. *Superior Performers, Inc.*, 2015 WL 471289, at *4.

Because the rule against claim splitting is based on the same principle as claim preclusion, the same claim preclusion principle that bars a subsequent suit on the same issues between the same parties likewise bars a concurrent suit between the same parties on the same issues. In the traditional claim preclusion analysis, as is the case with claim splitting, whether a second suit is barred turns on whether the same parties are involved and whether the new claim "arises out of

10

the same transaction or series of transactions as the first claim." *Sensormatic*, 273 F. App'x at 265 (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir. 2002)). Under both claim preclusion and claim splitting principles, therefore, a party must assert all claims against the same defendant that arise from a common nucleus of operative facts in a single lawsuit or lose the right to later bring claims not asserted in the original lawsuit. *Id.*

Moreover, a related second suit does not become permissible simply because it alleges a slightly different cause of action or seeks different relief. *See Rousseau v. Howard Cty., Md.*, No. JFM-09-CV-1079, 2009 WL 4018551, at *3 (D. Md. Nov. 19, 2009), *aff'd on other grounds*, 425 F. App'x 193 (4th Cir. 2011) (noting that "the fact that some of the plaintiffs and defendants are different in the instant case does not cut against dismissal for claim splitting[,]" as the defendants in the second suit should have been joined in the first.). Thus, under the rule against claim splitting, the second action must be dismissed where (1) the same parties are involved; (2) the claims arise out of the same transaction or series of transactions or a common nucleus of operative facts; and (3) the second claim could have been asserted as part of the first suit. *Sensormatic Sec. Corp.*, 452 F. Supp. 2d at 626 (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140-41 (2d Cir. 2000)).

### 1. BlackRock and Its Attorneys Knowingly and Impermissibly Split Its Fraud and Negligent Misrepresentation Claims.

BlackRock and its attorneys must be sanctioned for attempting to circumvent the Court's Order denying it leave to amend. The Court already denied BlackRock's attempt to add fraud and negligent misrepresentation to the 2015 Action. Ex. I. BlackRock may not file a duplicative lawsuit in order to escape the denial of that motion. *See Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) ("[T]he court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints."); *Myers*, *supra*, 102 F. Supp. 2d at 1224 (holding that party who had

missed a deadline to amend its complaint could not "seek to remedy this defect by bringing another suit naming the identical plaintiff, the identical defendant, and identical operative facts"). On this basis alone, the Court should issue sanctions against BlackRock pursuant to Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent powers.

Relatedly, all three prongs of the test for impermissible claim splitting are met here. First, the fraud and negligent misrepresentation allegations in this action and the 2015 Action involve the same parties: BlackRock as plaintiff, and Duke Energy as defendant.

Second, both this action and the 2015 Action arise from a common nucleus of operative facts. In determining whether claims arise out of the same transaction or series of transactions, a court should consider whether the claims in the separate actions represent a natural grouping of claims, and whether the issues in the two suits are so "woven together" that they would form a "convenient unit for trial purposes." *Barefoot v. Polk*, No. 5:07-CT-3029-D, 2011 WL 1542084, at *2 (E.D.N.C. Apr. 21, 2011) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)). In considering whether suits are "woven together," courts look to the claims' relatedness in "time, space, origin, or motivation." *Id.*

In its reply brief in support of its motion for leave to amend the 2015 Complaint, BlackRock conceded that the fraud and negligent misrepresentation claims here were related to other claims in the 2015 Action, arguing that it should be permitted to amend its complaint to add those same claims because "[t]he interest of justice and the efficiency of the Court system are also better served by allowing a party to assert *all related claims for relief* against a defendant or defendants in a single lawsuit." Ex. M, 2015 Action, D.E. 65, Plaintiff's Reply on Motion to Amend, at 12 (emphasis added). That concession of relatedness is in fact true.

Specifically, BlackRock alleges fraud and negligent misrepresentation arising out of the same contract and contract negotiations that form the basis of the 2015 Action. BlackRock's purported fraud and negligent misrepresentation claims are based on (1) alleged statements a Duke Energy employee made at a March 5, 2012 meeting that BlackRock's representatives attended and (2) a May 8, 2013 email from Shirley Johnson of Duke Energy to Gary Ahlberg of BlackRock. Ex. K at ¶ 158-69. Tellingly, BlackRock's instant Complaint and the 2015 Complaint contain nearly identical allegations. For example, in the 2015 Action, BlackRock alleged:

> 72. During [the March 2012] negotiations, Gary Ahlberg and BlackRock's attorney directly called to Progress Energy's negotiators' attention, and specifically objected to, the clause in the proposed Master Contract submitted by Progress Energy that provided a "termination for Owner's convenience". . . that allowed Progress Energy to terminate the Master Contract for their own convenience.

> 73. The Progress Energy negotiators then specifically stated that Progress Energy had never enforced this provision, and that it certainly would not be entering into the agreement if they ever intended to invoke that provision. The Progress Energy representatives also stated at that time that Progress Energy was then in the process of being acquired by Duke Energy, and that Duke Energy insisted that the "termination for Owner's convenience" clause remain in the Master Contract.

> 74. Mr. Ahlberg subsequently executed the Master Contract on behalf of BlackRock based upon these oral representations from Progress Energy.

Ex. G ¶¶ 72-74. In the 2018 Complaint, BlackRock modified the allegations only slightly:

> 112. In a meeting on March 5, 2012, BlackRock's Gary Ahlberg and BlackRock's attorney David P. Walen met with Progress Energy's Daiva Formanek, Steven Castagnero, and Stan Morton in Cary, North Carolina, to finalize the terms of [of the Master Contract.]

> 113. Progress Energy's Daiva Formanek then specifically stated that Progress Energy had never enforced "termination for Owner's convenience" provisions, and that it certainly would not be entering into the agreement with BlackRock if they ever intended to invoke that provision. Daiva Formanek also stated at that time that Progress Energy was then in the process of being acquired by Duke Energy, and that Duke Energy insisted that the "termination for Owner's convenience" clause remain in the Master Contract and the Individual Project Contract.

114. On March 15, 2012 and based upon the oral representations made by Progress Energy, BlackRock revised its written proposal stating that if Progress Energy committed to a five-year agreement with the necessary revenue commitments to compensate BlackRock on a time and materials basis through January 31, 2017, then BlackRock would complete the work required . . . .

Ex. K at ¶¶ 112-14. Thus, because the fraud and negligent misrepresentation claims in this Action arise out of the exact same facts underpinning the breach of contract claim in the 2015 Action, the second prong of the claim-splitting analysis is satisfied.

Finally, BlackRock had the opportunity to bring these claims in the 2015 Action. As evidenced above, BlackRock was clearly aware of the facts supporting its claims for fraud and negligent misrepresentation when it filed the 2015 Action, as it participated in the negotiations and included those facts in its 2015 Complaint. BlackRock cannot (and in the 2015 Action, did not) justify its failure to bring those claims in the 2015 Action. Nor can BlackRock explain why it did not bring its motion to amend the 2015 Complaint until after the scheduling order deadline passed. Therefore, the third claim splitting prong is also satisfied. In sum, BlackRock's fraud and negligent misrepresentation claims against Duke Energy are clearly so "woven together" with the 2015 Action that BlackRock cannot bring a second suit premised on those claims. *See Sensormatic*, *supra*, 273 F. App'x at 265 (affirming dismissal of second suit where plaintiff split claims).

### 2. BlackRock and Its Attorneys Knowingly and Impermissibly Split Its Copyright Claims.

Just as with its fraud and negligent misrepresentation claims, BlackRock uses this second suit to avoid the Court's Order denying its Motion for Leave to Amend the 2015 Action to add the same sixteen copyright registrations here. *See Sensormatic*, *supra*, 273 F. App'x at 265*; Walton*, *supra*, 563 F.2d at 70; *Myers*, *supra*, 102 F. Supp. 2d at 1224. On this basis alone, the Court should issue sanctions against BlackRock pursuant to Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent powers.

14

Moreover, the copyright claims asserted in the 2015 Action and 2018 Action are nearly identical and satisfy the three-part test for claim splitting. The first prong is met because both actions involve the same parties—BlackRock, as plaintiff, and Duke Energy and AMEC, as defendants.

The second prong is also satisfied because BlackRock admitted in a reply brief that the copyright right claims based on the sixteen registrations here are related to the copyright claims in the 2015 Action. Ex. M at 12 ("The interest of justice and the efficiency of the Court system are also better served by allowing a party to assert *all related claims for relief* against a defendant or defendants in a single lawsuit." (emphasis added)). That admission alone satisfies the second claim splitting prong. And that admission is in fact true.

Although the copyright infringement claim is based on two registrations in the first action, and sixteen registrations in the second action, both sets of copyright claims arise out of the "same transaction or series of transactions, or a common nucleus of operative facts" because they are predicated on Duke Energy's purported furnishing of drawings to AMEC during the same period of time (i.e., purported post contract termination) and purported subsequent submission of those drawings to DEQ. For example, in the 2015 Action, BlackRock alleged, in pertinent part:

> 102. Evidence of Duke Energy's unlawful copying as well as unlawful copying by Amec and Charah of BlackRock's intellectual property appears repeatedly on the NC DENR website.
> . . . .
> 120. Upon information and belief, subsequent to the termination of BlackRock's contract, Duke Energy copied and furnished to Amec documents and technical drawings that Duke Energy had no right to copy or distribute without BlackRock's authorization, and that Amec furnished copies of these technical drawings and documents to Charah, with Charah then delivering copies to ESP.
> . . . .
> 123. As described above, information BlackRock has obtained from NC DENR and other sources provides ample evidence that BlackRock Technical Documents created by BlackRock and furnished to Duke Energy were copied, or digitized, by Duke Energy employees, and then these copies were distributed to

15

replacement contractors Amec and Charah in an effort to proceed with work on projects at the Roxboro Landfill that BlackRock had been working on up to termination of the Master Contract, but which projects had not been completed. Amec and Charah then added their own comments, design information, or technical points to the BlackRock Technical Documents and forwarded these derivative works to Duke Energy, which then submitted these derivative works to NC DENR.

Ex. G ¶¶ 102, 120, 123.[3]  BlackRock asserts similar allegations in the 2018 Action:

> 132.    Evidence of Duke Energy's unlawful copying as well as unlawful copying by Amec of BlackRock's intellectual property appears repeatedly on the NC DENR website.
> . . . .
> 140.    These technical drawings were then copied by Duke Energy and furnished to Amec to allow Amec to use and/or copy those technical drawings to continue the engineering work on Phase 6 of the Roxboro Landfill.
> . . . .
> 144.    Duke Energy copied and furnished to Amec BlackRock's proprietary documents, technical drawings and CAD files that Duke Energy had no right to copy or distribute without BlackRock's authorization. Amec then used these copies to produce derivative works based on BlackRock's original works.
> . . . .
> 146.    As described above, information BlackRock has obtained from NC DENR and discovery in the 2015 Lawsuit provides ample evidence that BlackRock technical documents, technical drawings and CAD files created by BlackRock and furnished to Duke Energy were copied, or digitized, by Duke Energy employees, and then these copies were distributed to Amec in an effort to proceed with work on Phase 6 at the Roxboro Landfill that BlackRock had been working on up to termination of the Master Contract, but which projects had not been completed. Amec then added their own comments, design information, or technical points to the BlackRock technical documents, technical drawings and CAD files, and forwarded these derivative works to Duke Energy, which then submitted these derivative works to NC DENR.

Ex. K at ¶¶ 132, 140, 144, 146.  All copyright claims arising out of that same single alleged wrong around the same timeframe—copying and/or transfer of drawings to AMEC post purported contract termination—should be brought as a single unit in the same suit, not split suits.

*Sensormatic*, *supra*, 452 F. Supp. 2d at 626 (claim splitting "prohibits a plaintiff from prosecuting

---

[3]  BlackRock voluntarily dismissed Charah from the 2015 Action on March 26, 2016.  Ex. N., 2015 Action, D.E. 30, Voluntary Dismissal.  Therefore, the analysis in the instant motion is limited to co-defendants Duke Energy and AMEC.

its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." (internal citation omitted)).

There are additional commonalities of operative facts between the copyright claims in both actions and indeed both sets of copyright registrations. Both involve (1) the same overall design of the same Roxboro landfill; (2) the same collaborative efforts between Duke Energy and BlackRock to effect the landfill design and operation; (3) the same First Contract that provides Duke Energy ownership of the copyrights at issue in both suits; (4) the same Phase 6 technical drawings for Roxboro landfill; and (5) the same cost-savings damages theory, albeit flawed.[4] *Cf.* Ex. G (Registration Nos. TX 8-070-195 and TX 8-070-196); Ex. K (Registration Nos. TX 8-159-243, TX 8-159-251, TX 8-159-259, VAu 1-288-134, VAu 1-288-135). Indeed, in some instances, the only difference between the drawings associated with the purported copyright registrations at issue in the two lawsuits is that the drawings in the 2015 Action are "Permit Issue – Not For Construction" drawings and, in the 2018 Action, the drawings are "Issued For Construction" versions of the *same* technical drawings in the 2015 Action. Additional commonalities in the facts that undergird both actions' copyright claims are also set forth in Table 1 attached to the Thompson Declaration. The drawings at issue in both actions are clearly so "woven together" they should be brought as a single "convenient unit for trial purposes." *Sensormatic*, *supra*, 273 F. App'x at 265; *Barefoot,* 2011 WL 1542084, at *2. Because the copyright claims in both actions necessarily arise from a common nucleus of operative facts, the second prong is met.

Finally, the third prong is satisfied since BlackRock had ample opportunity to bring all copyright infringement claims in the 2015 Action. First, BlackRock applied for twelve of the eighteen registrations in August 2015 before it filed the 2015 Action. Because district courts in

---

[4] BlackRock's flawed damage theory in the 2015 Action is the subject of Duke Energy's motion to preclude damages. Ex. O, 2015 Action, D.E. 73, Duke Energy's Motion to Preclude Damages.

this Circuit have held that the threshold requirement of copyright registration for filing suit is satisfied by applying for a copyright registration, not obtaining the certificate of registration, BlackRock could have included all twelve copyright applications in the 2015 Action. *See Performance Sales & Mktg. LLC v. Lowe's Cos.*, No. 5:07-CV-00140-RLV, 2012 WL 4061680, at *8 (W.D.N.C. Sept. 14, 2012) (adopting the registration-upon-application approach); *Iconbazaar, L.L.C. v. Am. Online, Inc.*, 308 F. Supp. 2d 630, 633 (M.D.N.C. 2004) (same). BlackRock chose not to do so.

As to the remaining CAD file registrations, BlackRock claims that it did not learn of the alleged copying of the CAD files subject to those registrations until it completed review of AMEC's document production in the 2015 Action. Ex. K ¶ 142. Importantly, AMEC's fourth and final document production was served on or about July 10, 2017. Thompson Decl. at ¶ 5. But BlackRock's own delay in reviewing AMEC's production did not excuse its failure to amend the 2015 complaint in a timely manner.[5] Ex. I. Therefore, the third prong is met.

BlackRock cannot be permitted to compound the prejudice that the Court deemed would have occurred to Duke Energy had BlackRock's motion for leave to amend been granted, by inserting the same previously excluded sixteen copyright registrations in a second, identical lawsuit. By delaying its assertion of these claims until 2018, BlackRock requires Duke Energy and the Court to duplicate the work they have already performed and will perform in the 2015 Action. This waste of resources is the exact type of problem the claim splitting doctrine was designed to prevent. Such conduct is sanctionable as discussed below.

---

[5] Tellingly, BlackRock completed the CAD files that are the subject of the purported registrations in 2013 or 2014. Ex. J. Yet, BlackRock delayed applying for their copyright registration until August 2017. Had BlackRock acted earlier, it could have added the CAD files to the 2015 Action.

### 3. Sanctions Should be Imposed for the Split Claims Pursuant to Rule 11(b)(2), 28 U.S.C. § 1927, And The Court's Inherent Powers.

Rule 11, Section 1927, and the Court's inherent powers provide independent bases for sanctioning BlackRock's and its attorneys for the impermissibly split claims. First, sanctions are warranted under Rule 11, as BlackRock's attorney signed a legally untenable Complaint that needlessly multiplied the litigation between Duke Energy and BlackRock. Rule 11 requires that any attorney or party who signs a pleading must certify to the Court that such pleading is "grounded in fact, legally tenable, and not interposed for any improper purpose." *Chaudhry*, *supra*, 174 F.3d at 410; *see also* Fed. R. Civ. P. 11(b). Here, BlackRock and its attorneys knew or should have reasonably known that its claims were not "legally justified," *In re Johnson*, *supra*, 186 F. App'x at 394, as its attempts to amend its Complaint have already been denied by this Court. Moreover, Fourth Circuit law makes clear that claim splitting is impermissible, and BlackRock could have easily discerned that its second Complaint would be barred. *E.g.*, *Sensormatic*, *supra*, 273 F. App'x at 265; *see also, e.g.*, *Superior Performers, supra*, 2015 WL 471389, at *4. The Court may also infer improper purpose from the claims' lack of legal foundation, as well as their filing less than a week after an unsuccessful mediation. *See Giganti*, *supra*, 222 F.R.D. at 313; *see also Aldmyr Sys., Inc.*, *supra*, 215 F. Supp. 3d at 468 (Rule 11 sanctions warranted for defending against frivolous copyright infringement suit). Despite having been told by the Court that they could not bring these claims in the Action and the clear tenets of this Court on claim splitting, BlackRock's counsel brought, and refused to withdraw, the second suit. No reasonable attorney would have maintained the second Action. And to compound the unreasonableness, BlackRock's counsel failed to notify the Court that the second suit was related to the first. *See* Local Civil Rule 40.3(b). For these reasons, sanctions are warranted under Rule 11(b).

In the alternative, sanctions should be imposed under 28 U.S.C. § 1927, as BlackRock's conduct has "unreasonably and vexatiously" multiplied proceedings, thus causing Duke Energy to incur unnecessary expense. *Blair*, *supra*, 757 F.2d at 1437-38. Duke Energy already defended against BlackRock's Motion to Amend in the 2015 Action. By bringing the claims again, disguised as a new lawsuit, BlackRock has required Duke Energy to expend significant time and expense defending against the same claims for a second time. Moreover, if BlackRock is allowed to pursue this second action, Duke Energy will be forced to relitigate many of the same issues in the 2015 Action, including filing redundant dispositive motions and conducting the same discovery. In short, BlackRock filed the second lawsuit to needlessly prolong the first litigation. BlackRock and its attorneys must be sanctioned for this conduct.

Independent of Rule 11 and 28 U.S.C. § 1927, the Court should also issue sanctions pursuant to its inherent powers. The Court already denied BlackRock's Motion to Amend its Complaint in the 2015 Action. By splitting its claims, and bringing the same claims under the guise of a new lawsuit, BlackRock has acted in direct contravention of the Court's Order. Furthermore, BlackRock's delay in bringing these claims would require the Court to preside over a case—including a motion to dismiss, discovery, dispositive motions, and a trial—that is nearly identical to the 2015 Action. Thus, the second suit will waste valuable judicial resources, as the Court repeats much of the work in the new Action that it has already done in the first Action. Duke Energy will also be significantly prejudiced by having to defend against two suits simultaneously. For these reasons, sanctions are also warranted under the Court's inherent powers.

Therefore, because BlackRock impermissibly split its claims in an attempt to circumvent the Court's Order denying its Motion to Amend, and because Duke Energy has been prejudiced by BlackRock's actions, Duke Energy respectfully requests that the Court issue sanctions pursuant

to Rule 11, 28 U.S.C. § 1927, and/or its inherent powers in the form of an immediate dismissal of the 2018 Action with prejudice and an award of Duke Energy's attorney's fees and costs incurred in the 2018 Action.

### C.   BlackRock and Its Attorneys Knowingly Presented Claims that are Time-Barred.

BlackRock's claims for fraud, negligent misrepresentation, and copyright infringement are sanctionable for the additional reason that the claims are obviously time barred.  Federal courts routinely award sanctions where an attorney has knowingly filed a claim that is clearly time-barred. As the Fourth Circuit has declared:  "Where an attorney knows that a claim is time-barred and has no intention of seeking reversal of existing precedent, as here, *he makes a claim groundless in law and is subject to Rule 11 sanctions*."  *Brubaker*, *supra*, 943 F.2d at 1385 (time-barred defamation claim warranted Rule 11 sanctions) (emphasis added); *see also Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988) (reversing denial of Rule 11 sanctions where "[e]ach of [plaintiff's] complaints was barred on its face by the statute of limitations").

#### 1.   BlackRock's Claims for Fraud and Negligent Misrepresentation are Wholly Time-Barred.

Here, even a quick glance at the Complaint reveals that BlackRock's causes of action for fraud and negligent misrepresentation are clearly time-barred.  Under North Carolina law, both claims are governed by a three-year statute of limitations.  *See* N.C. Gen. Stat. §§ 1-52(5) and (9). A claim for fraud begins to run "from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence," while a claim for negligent misrepresentation accrues when "the claimant suffers harm because of the misrepresentation, and . . . discovers the misrepresentation."  *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 203 F. Supp. 3d 608, 614 (M.D.N.C. 2016) (internal quotations and citations omitted).

Since both causes of action are predicated on BlackRock's allegation that Duke Energy made a false representation in March 2012 that the "termination for Owner's convenience" clause in the Master Contract would not be enforced against BlackRock (Ex. K ¶¶ 158-70, 176-80), BlackRock, under its theory of the case as alleged in the Complaint, discovered that Duke Energy would exercise the termination for convenience clause in the fall of 2014 resulting in purported harm to BlackRock. [6] Ex. K ¶¶ at 127-31.

Because, by BlackRock's own admission, its claims for fraud and negligent misrepresentation accrued no later than the fall of 2014, the three-year limitations periods had already elapsed by the time BlackRock commenced the instant action in February 2018.[7] *See*, *e.g.*, *Topshelf Mgmt.*, 203 F. Supp. 3d at 614-15 (dismissing claims for fraud and negligent misrepresentation as time-barred where they were based on the allegation that defendant had made a misrepresentation regarding the parties' continued business relationship such that "[plaintiff] clearly would have known that [defendant's] promises of future contracts were false when [defendant] terminated its relationship in January 2012"); *Forshaw Indus., Inc. v. Insurco, Ltd.*, 2 F. Supp. 3d 772, 783 (W.D.N.C. 2014) (applying three-year limitations period to fraud and negligent misrepresentation claims).

In short, BlackRock's claims for fraud and negligent misrepresentation are time-barred *based on the face of the Complaint alone*. Since even "a cursory review of [North Carolina] limitations law should have demonstrated to plaintiffs that [these claims] were time-barred,"

---

[6] Moreover, even under Duke Energy's position that the Master Contract was terminated on December 5, 2014, BlackRock's claims are still time-barred, as the statute of limitations would have expired on December 5, 2017—nearly three months before the Complaint was filed on February 26, 2018.

[7] To the extent BlackRock intends to argue that the statute of limitations has been tolled, there is no tolling either by agreement of the parties or the case law of this Circuit. Similarly, if BlackRock intends to argue that the claims should relate back to the 2015 Action or its Motion to Amend, this argument is not supported by the case law of this Circuit either. Simply put, this new lawsuit is not subject to tolling or relation back arguments.

*Brubaker*, *supra*, 943 F.2d at 1370-71, the unavoidable conclusion is that BlackRock and its attorneys asserted these frivolous claims knowing that they have zero chance of success under black-letter North Carolina law. This is sanctionable conduct. *See*, *e.g.*, *Carlton*, *supra*, 125 F.R.D. at 430 (holding that inclusion of claims for fraud and negligent misrepresentation were sanctionable under Rule 11 where "[r]easonable inquiry by the attorneys would have disclosed that the statute of limitations had run").

### 2. BlackRock's Claim for Copyright Is Partially Time-Barred.

Certain of BlackRock's copyright claims are time-barred by a three-year statute of limitations. Under the Copyright Act, and as recognized by the Fourth Circuit, copyright actions must be "commenced three years after the claim accrues." 17 U.S.C. § 507(b); *CACI Int'l, Inc. v. Pentagen Techs. Int'l, Ltd.*, Nos. 94-2058, 94-2220, 1995 WL 679952, at *3 (4th Cir. Nov. 16, 1995). "[A] claim accrues when 'one has knowledge of a violation or is chargeable with such knowledge.'" *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001). The record shows that BlackRock's limitations period for copyright infringement began to run no later than January 23, 2015 as to a particular subset of technical documents as described below.

BlackRock alleges that it was unaware of certain instances of copying and potential copyright infringement until it reviewed documents that were produced during discovery in the 2015 Action. *See, e.g.*, Ex. K ¶ 141. The evidence shows, however, that BlackRock, under its theory of the case, was aware of potential claims as early as September 2014, when Duke Energy distributed a Request for Information to prospective engineering firms, purportedly attaching BlackRock facility plans without prior notice to BlackRock. *Id.* ¶ 143. BlackRock had direct knowledge of the Request for Information because it responded to the request in a letter to Duke Energy, dated September 26, 2014. Ex. P, 2018 Action, D.E. 1-15, BlackRock Request for Information Response. Therefore, the three-year statute of limitations would have expired on

September 26, 2017—five months before the 2018 Action was initiated on February 26, 2018—at least as it relates to any BlackRock drawings in the Request for Information. [8]

After termination of the Second Contract on December 5, 2014, BlackRock attempted to thwart Duke Energy's efforts to obtain the permits necessary to operate Phase 6 of the Roxboro Landfill. On December 18, 2014, BlackRock sent a letter to DENR requesting that the agency allow BlackRock to withdraw its certification of a construction quality assurance for Phase 6A of the Roxboro Landfill ("report").[9] Ex. Q, BlackRock Letter dated December 18, 2014. In particular, BlackRock sought the return of the report and its removal from DENR's website. *Id.* BlackRock's request prompted an inquiry by DENR, to which Duke Energy responded on January 23, 2015, by, *inter alia*, submitting a report from AMEC, dated January 20, 2015. Ex. R, Duke Energy Response dated January 23, 2015. DENR notified BlackRock of its decision to deny BlackRock's request for withdrawal of certification by letter dated January 23, 2015. Ex. S, DENR Letter dated January 23, 2015. As such, BlackRock was on notice that AMEC's January 20, 2015 report, cited as a basis of purported copyright infringement in Paragraph 83 of the 2018 Complaint, was available on DENR's website. The three-year statute of limitations therefore expired on January 23, 2018—before the 2018 Action was filed.

Claims arising from any acts of alleged copying that occurred between September 26, 2014 and January 23, 2015 are barred by the statute of limitations, as well. Because BlackRock had actual notice of alleged infringing activity in September 2014 and January 2015, BlackRock would

---

[8] To the extent BlackRock intends to argue that the statute of limitations has been tolled, there is no tolling either by agreement of the parties to toll the statute of limitations, of the case law of this Circuit. Similarly, if BlackRock is intends to argue that the claims should relate back to the 2015 Action or its Motion to Amend, this argument is not supported by the case law of this Circuit either. Simply put, this new lawsuit is not subject to tolling or relation back arguments.

[9] This report contains Phase 6 technical drawings that are at issue in the copyright infringement claims in both the 2015 and 2018 Actions. *See* Section III.B.2.

have been in a position to discover other alleged acts of copying taking place in the intervening time period. Consequently, the limitations period for bringing claims related to those alleged acts expired months before BlackRock filed the complaint in the 2018 Action.

For these reasons, the copyright infringement claims of which BlackRock had knowledge and/or notice at least as of September 26, 2014 and through January 23, 2015 must be dismissed as time-barred.

### 3. Sanctions Should be Imposed for the Time-Barred Claims Pursuant to Rule 11(b)(2), 28 U.S.C. § 1927, And The Court's Inherent Powers.

For the same reasons set forth in Section B.3 above, the Court should sanction BlackRock and its attorneys for the facially time-barred claims. No reasonable attorney would have brought such claims in the second Action. Sanctions should be in the form of an immediate dismissal of the 2018 Action with prejudice and an award of Duke Energy's attorney's fees and costs incurred in the 2018 Action. *See*, *e.g.*, *Brubaker*, *supra*, 943 F.2d at 1385 ("Where an attorney knows that a claim is time-barred and has no intention of seeking reversal of existing precedent, as here, he makes a claim groundless in law and is subject to Rule 11 sanctions.").

### D. Blackrock Has No Standing To Bring Any Copyright Infringement Claim.

BlackRock's copyright infringement claim is sanctionable for the additional and independent reason that *Duke Energy* owns the copyright in the registered works, not BlackRock. Because BlackRock does not have exclusive ownership of the copyrights, its claims for copyright infringement necessarily fail.

### 1. Blackrock does not have Standing to Bring Suit, as it is not the Exclusive Owner of the Copyrights.

BlackRock's claim for copyright infringement is sanctionable as its core allegation—that it owns the subject copyrighted works—is not only without any legal basis whatsoever, it directly contravenes the express language of the parties' contract and BlackRock's performance

25

thereunder. As a prerequisite to any federal case, the party invoking federal jurisdiction must establish that it has standing to bring suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing in copyright actions is governed by 17 U.S.C. § 501(b), which provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." Courts have dismissed copyright infringement claims where a plaintiff does not have an ownership interest in the subject copyright. *E.g.*, *Nutter v. Clear Channel Commc'ns, Inc.*, No. 505CV65, 2006 WL 2792903, at *3 (N.D. W. Va. Sept. 26, 2006) (dismissing suit where plaintiff did not own copyright for lack of standing).

Here, overwhelming evidence, known to BlackRock before the filing of any lawsuit against Duke Energy, refutes BlackRock's assertion that it owns the copyrights in these drawings. Here, the First Contract provides that any copyrightable material was deemed a "work for hire" under the Copyright Act. Specifically, the First Contract expressly stated that "[a]ll reports, correspondence, documents, data, and other information relating to the Work are exclusively [Duke Energy's] property and are to be considered as proprietary and confidential." *See* Ex. B § 26; *see also id.* § 9 ("Any copyrightable material in any form shall be deemed to be a 'work for hire' under the Copyright Act."). Where a work is one for hire, the employer holds the copyright in the work unless the parties agree otherwise in writing. 17 U.S.C. § 201(b). "A work is for hire where it is either (1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work . . . (or) as a compilation . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101; *Armento v. Laser Image,*

26

*Inc.*, 950 F. Supp. 719, 728 (W.D.N.C. 1996) (finding independent contractor's map was a work for hire).

Equally importantly, in the First Contract, BlackRock assigned all copyrights in any copyrightable materials produced thereunder to Duke Energy's predecessor-in-interest. Ex. B § 9 ("[BlackRock] assigns any copyright in any copyrightable material produced hereunder to [Duke Energy].")

Because BlackRock does not have an interest in the copyrights that are the subject this Action, BlackRock does not have standing to bring suit. This deficiency was patently obvious to BlackRock and its attorneys before it filed the instant suit, at least from BlackRock's execution of the First Contract in 2000 and certainly from the discovery in the 2015 Action. Therefore, BlackRock and its attorneys should be sanctioned for bringing this baseless claim. No reasonable attorney would have filed the second lawsuit without standing because such claims have no chance of success.

Courts have not hesitated to award sanctions based on similarly baseless claims for copyright infringement. *See*, *e.g.*, *Robinson v. Double R Records*, No. 04-4120, 2007 WL 2049724, at *2 (S.D.N.Y. July 16, 2007) (awarding sanctions because it was "patently clear" that claim alleging copyright infringement action against plaintiff's co-author had "no chance of success" since it is settled law that a copyright owner cannot sue its co-owner for infringement); *Smith & Johnson, Inc. v. Hedaya Home Fashions Inc.*, No. 96-5821, 1996 WL 737194, at *8 (S.D.N.Y. Dec. 26, 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997) (awarding sanctions where plaintiff had disclaimed ownership of designs at issue and therefore copyright infringement claim had no chance of success); *Burger-Moss v. Steinman*, 127 F.R.D. 452, 453 (S.D.N.Y. 1989) (awarding sanctions where plaintiffs persisted in pursuing baseless copyright infringement claims

notwithstanding their inability to meet their burden to prove that defendants had access to the work at issue); *see also Nardi v. Cincinnati Ins. Co.*, 134 F.3d 363 (4th Cir. 1998) (affirming dismissal of copyright infringement suit and assessment of sanctions). Sanctions are similarly warranted here.

> ### 2. Sanctions Should be Imposed for the Copyright Infringement Claims Pursuant to Rule 11(b)(2), 28 U.S.C. § 1927, and the Court's Inherent Powers.

For the same reasons set forth in Section B.3 above, the Court should sanction BlackRock and its attorneys for the copyright infringement claims. No reasonable attorney would have brought such claims in the second Action without standing.

Despite the 21-day safe harbor period, BlackRock has refused to withdraw its frivolous Complaint. Such unjustified and vexatious conduct, done right after an unsuccessful mediation, warrants sanctions in the form of a an immediate dismissal of the 2018 Action with prejudice and an award of Duke Energy's attorney's fees and costs incurred in the 2018 Action. *See, e.g.*, *Chaudhry*, *supra*, 174 F.3d at 410 (affirming sanctions award under Rule 11 and § 1927 where "the case was brought in bad faith and for the purposes of harassment of the Defendants"); *In re Kunstler*, *supra*, 914 F.2d at 517 (affirming sanctions award under Rule 11 where "several substantial claims [were] without legal foundation"); *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 211 n.1 (4th Cir. 1988) (holding that sanctions would be appropriate under Rule 11 and § 1927 where plaintiff's counsel continued to pursue claims "after it would have been reasonable and responsible to dismiss the claims"); *GO Comput. Inc. v. Microsoft Corp.*, 437 F. Supp. 2d 497, 507 (D. Md. 2006) (striking allegations from amended complaint that violated Rule 11); *see also Aldmyr Sys., Inc.*, *supra*, 215 F. Supp. 3d at 468 (awarding defendants their reasonable attorney's fees and costs incurred in defending against baseless copyright infringement and trade secrets misappropriation claims); *Giganti*, *supra*, 222 F.R.D. at 315 (awarding attorney's fees jointly and

severally against plaintiffs and their counsel necessary to "adequately compensate defendants for fees incurred in responding to the offending claims and preparing and presenting the sanctions motion," to ensure deterrence of future Rule 11 violations, and as punishment for the Rule 11 violation).[10]  Such sanctions will vindicate the purposes of Rule 11, Section 1927, and the Court's inherent powers by making clear to BlackRock that such frivolous filings will not be tolerated, compensating Duke Energy for having to incur significant unnecessary fees and expenses, and deterring BlackRock from filing similarly groundless claims in the future.[11]

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons Duke Energy respectfully requests that this Court impose sanctions against BlackRock and its attorneys by (i) immediately dismissing BlackRock's frivolous Complaint with prejudice, and (ii) awarding Duke Energy its reasonable attorney's fees and costs incurred in defending against these baseless claims pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and/or the Court's inherent powers.

---

[10] As an alternative basis for the liability, the Court should assess such fees and costs against BlackRock's attorneys pursuant to § 1927 or the Court's inherent powers.

[11] If so granted, Duke Energy will provide the Court with contemporaneous time and expense records specifying, for each attorney performing work on a matter, the date, the hours expended, and the nature of the work done in connection with opposing BlackRock's Complaint in the 2018 Action and in advancing the instant motion for sanctions.

29

This the 1st day of June, 2018.

*/s/ Rachelle H. Thompson*
Mark E. Anderson (N.C. Bar No. 15764)
Joan S. Dinsmore (N.C. Bar No. 44990)
Rachelle H. Thompson (N.C. Bar No. 46450)
Valyce M. Davis (N.C. Bar No. 47685)
McGuireWoods LLP
434 Fayetteville Street, Suite 2600
Raleigh, NC 27601
T: (919) 755-6600
F: (919) 755-6699
Email: manderson@mcguirewoods.com
          jdinsmore@mcguirewoods.com
          rthompson@mcguirewoods.com
          vdavis@mcguirewoods.com

*Attorneys for Duke Energy Progress, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies the foregoing **MEMORANDUM IN SUPPORT OF DUKE ENERGY PROGRESS, LLC'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE 11, 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWERS** has been filed with the Clerk of Court for the United States District Court, Eastern District of North Carolina, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented to accept service by electronic means.

This the 1st day of June, 2018.

*/s/ Rachelle H. Thompson*
Mark E. Anderson (N.C. Bar No. 15764)
Joan S. Dinsmore (N.C. Bar No. 44990)
Rachelle H. Thompson (N.C. Bar No. 46450)
Valyce M. Davis (N.C. Bar No. 47685)
McGuireWoods LLP
434 Fayetteville Street, Suite 2600
Raleigh, NC 27601
T: (919) 755-6600
F: (919) 755-6699
Email: manderson@mcguirewoods.com
jdinsmore@mcguirewoods.com
rthompson@mcguirewoods.com
vdavis@mcguirewoods.com

*Attorneys for Duke Energy Progress, LLC*