IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-33-D

| | |
|---|---|
| BLACKROCK ENGINEERS, INC., | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| DUKE ENERGY PROGRESS, LLC, | ) |
| Defendant. | ) |

On February 26, 2018, BlackRock Engineers, Inc. ("BlackRock" or "plaintiff") filed a complaint against Duke Energy Progress, LLC ("Duke Energy") and Amec Foster Wheeler Environment and Infrastructure, Inc. ("Amec"; collectively "defendants"), alleging copyright infringement, fraud, and negligent misrepresentation [D.E. 1].[1] On June 1, 2018, Duke Energy moved for sanctions against BlackRock [D.E. 26], moved to dismiss the complaint for failure to state a claim [D.E. 28], moved for a hearing concerning its motions [D.E. 30], and filed memoranda in support [D.E. 27, 29]. On the same date, Amec moved to dismiss the complaint for failure to state a claim [D.E. 31] and filed a memorandum in support [D.E. 32]. On July 23, 2018, BlackRock responded in opposition to defendants' motions to dismiss [D.E. 37, 39], responded in opposition to Duke Energy's motion for sanctions [D.E. 40], and stated that it did not object to Duke Energy's motion for a hearing [D.E. 38]. On August 27, 2018, defendants replied [D.E. 42–44]. On December 18, 2018, BlackRock voluntarily dismissed Amec [D.E. 46]. As explained below, the court grants in part and denies in part Duke Energy's motion to dismiss, denies Duke Energy's

---

[1] On May 30, 2018, BlackRock withdrew its negligent misrepresentation claim. See [D.E. 40] 13. On July 23, 2018, BlackRock withdrew its fraud claim. See id.

motion for sanctions, denies Duke Energy's motion for a hearing, and denies as moot Amec's motion to dismiss.

I.

BlackRock provides "engineering services, including services related to civil and environmental engineering and waste management consulting." Compl. [D.E. 1] ¶ 3. In 1999, North Carolina and the United States promulgated regulations concerning the storage of coal ash waste in landfills. See id. ¶ 4. In response to these regulations, Carolina Power & Light, Inc. ("CP&L") contracted with BlackRock from 1999 until 2011 to design and provide engineering and support services for improvements to a landfill at the Roxboro Steam Electric Plant (the "Roxboro Landfill") to enable the landfill to store coal ash waste. See id. ¶¶ 5–8, 52–61. BlackRock's plan to improve the Roxboro Landfill had five phases. See id. ¶¶ 8, 56, 59–60, 63. In 2003, CP&L began operating as Progress Energy Service Company, LLC ("Progress Energy"). See id. ¶¶ 7, 57. In July 2011, BlackRock initiated discussions with Progress Energy to expand the Roxboro Landfill. See id. ¶ 9, 64. BlackRock's proposal involved four new phases and would increase the Roxboro Landfill's capacity to store coal ash waste for twenty years. See id. As part of these discussions, BlackRock "prepared planning memos and technical documents relating to the engineering work on the expansion project" and submitted the materials to Progress Energy. Id. ¶ 11.

On September 19, 2011, Gary Ahlberg ("Ahlberg"), the president of BlackRock, met with Progress Energy executives to discuss a long-term agreement for the project. See id. ¶ 14. On October 27, 2011, BlackRock "tendered the first draft of the proposed agreement with Progress Energy for the new project." Id. ¶ 15; Ex. D [D.E. 1-5]. On February 5, 2012, Progress Energy "proposed a five-year contract including a Master Service Agreement that would allow BlackRock to bid on new engineering work as the 'Owner's Engineer' for coal ash projects." Compl. [D.E. 1]

2

¶ 16. On March 4, 2012, Progress Energy tendered a draft Master Contract to BlackRock for review. See id. ¶ 17; Ex. E [D.E. 1-6]. BlackRock alleges that "no provision in the draft Master Contract prepared by Progress Energy . . . granted Progress Energy ownership of any intellectual property rights in any technical documents, technical drawings, or CAD files created by BlackRock." Compl. [D.E. 1] ¶ 17.

In March 2012, BlackRock and Progress Energy negotiated an extension of BlackRock's existing contract (Amendment 30 of the Individual Project Contract No. 14574). See id. ¶¶ 18–22, 112; Ex. F [D.E. 1-7]. During the same time, Duke Energy was attempting to purchase Progress Energy. See Compl. [D.E. 1] ¶ 18. The amended agreement contained a "termination for owner's convenience" clause. Id. ¶¶ 19–20. BlackRock alleges that Progress Energy said that the provision was non-negotiable at Duke Energy's request, represented that Progress Energy had never exercised a provision of that nature, and assured BlackRock that it would not exercise the termination clause. See id. ¶ 20, 113. On March 19, 2012, Progress Energy approved and incorporated the amendment into BlackRock's contract. See id. ¶ 22, 115. The amended contract provided for a minimum five-year term ending on January 31, 2017. See id. ¶ 22.

In July 2012, Duke Energy acquired Progress Energy and began managing the Roxboro Landfill. See id. ¶ 62. In January 2013, Duke Energy and BlackRock signed the Master Contract "with a retroactive effective date of April 1, 2012." Id. ¶ 23. On August 7, 2013, BlackRock and Duke Energy agreed to terminate their prior individual project contract and replaced it with Work Authorization No. 1 ("WA1"). See id. ¶¶ 24, 29; Ex. I [D.E. 1-10]. During this time, BlackRock continued to perform its obligations under the Master Contract and "furnished Duke Energy with numerous BlackRock technical documents, technical drawings and CAD files." Compl. [D.E. 1] ¶ 31. However, as early as February 2013, Duke Energy "made inquiries [concerning] the steps

3

required to replace BlackRock" as the Engineer of Record for the Roxboro Landfill. Id. ¶ 36.

During the fall of 2014, Duke Energy terminated all contracts with BlackRock. See id. ¶ 30. BlackRock alleges that, after Duke Energy did so, Duke Energy contracted with Amec to continue the Roxboro Landfill project, "copied the BlackRock technical documents, technical drawings and CAD files[,]" and "sent those copies to Amec." Id. ¶ 37; see id. ¶¶ 35–36, 83–87. BlackRock alleges that Duke Energy thereby violated its copyrights. See id. ¶¶ 149–56. BlackRock "has registered a total of nineteen purported copyrights for work it completed at the Roxboro Landfill while under contract with Duke Energy." [D.E. 27] 10. In August 2015, BlackRock applied for twelve of the copyrights. See id. In August 2017, BlackRock applied for seven additional copyright registrations. See id. at 11.

On November 25, 2015, BlackRock filed a complaint against Duke Energy, Amec, and Charah, Inc. ("Charah"). See Compl., BlackRock Eng'rs, Inc. v. Duke Energy Progress, LLC, No. 7:15-CV-250-D [D.E. 5] (E.D.N.C. Nov. 25, 2015) ("BlackRock I"). BlackRock alleged copyright infringement against all defendants concerning two of BlackRock's copyrights. See id. ¶¶ 1, 129–38. On September 11, 2017, BlackRock moved to amend its complaint to assert a fraud claim and negligent misrepresentation claim against Duke Energy and to add copyright registration certificates and applications. See id. [D.E. 61] (E.D.N.C. Sept. 11, 2017). On December 14, 2017, the court denied BlackRock's motion to amend as untimely and unfairly prejudicial. See id. [D.E. 75] (E.D.N.C. Dec. 14, 2017).

On February 21, 2018, Duke Energy and BlackRock engaged in an unsuccessful mediation. See [D.E. 27] 11. On February 26, 2018, BlackRock filed a complaint against Duke Energy and Amec alleging copyright infringement concerning sixteen copyrights against both defendants, fraud against Duke Energy, and negligent misrepresentation against Duke Energy. See Compl. [D.E. 1]

4

("BlackRock II"). On May 30, 2018, "in response to [Duke Energy's] safe-harbor letter under Rule 11 of the Federal Rules of Civil Procedure," BlackRock withdrew its negligent misrepresentation claim against Duke Energy. [D.E. 37] 10. On July 23, 2018, BlackRock withdrew its fraud claim against Duke Energy and withdrew its copyright claim as to one of BlackRock's copyrights. See id. at 7, 10 (withdrawing copyright infringement claim concerning copyright TX8-159-249). On December 18, 2018, BlackRock voluntarily dismissed Amec with prejudice as part of a settlement agreement. See [D.E. 46].

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302; see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

5

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. A court also may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004); see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161–62 (4th Cir. 2008); Parks v. Petsmart, No. 5:13-CV-777-D, 2014 WL 11996387, at *2 (E.D.N.C. Feb. 12, 2014) (unpublished), aff'd, 577 F. App'x 210 (4th Cir. 2014) (per curiam) (unpublished). Similarly, the related rule against claim splitting "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 273 F. App'x 256, 265 (4th Cir. 2008) (per curiam) (unpublished) (quotation omitted); see The Haytian Republic, 154 U.S. 118, 124–25 (1894); Katz v. Gerardi, 655 F.3d 1212, 1217–18 (10th Cir. 2011); Pueschel, 369 F.3d at 355; Nash Cty. Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 490 (4th Cir. 1981); Dorsey v. Jacobson Holman PLLC, 764 F. Supp. 2d 209, 212–13 (D.D.C. 2011), aff'd, 476 App'x 861 (D.C. Cir. 2012) (per curiam) (unpublished). A court may dismiss a second

6

suit "if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim." Sensormatic Sec. Corp., 273 F. App'x at 265 (quotation omitted). That is, "[w]hen one suit is pending in federal court, a plaintiff has no right to assert another action on the same subject in the same court, against the same defendant at the same time." Id. "[T]he rule against claim splitting [often] applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit." Id. (collecting cases).

As for BlackRock's complaint against Duke Energy, BlackRock's only remaining claim is for copyright infringement. BlackRock alleges that Duke Energy, a party in BlackRock I, has infringed fifteen of BlackRock's copyright registrations "related to work that [Duke Energy] hired and contracted BlackRock to perform at the [Roxboro Landfill]." [D.E. 37] 4; see Compl. [D.E. 1] ¶ 2. BlackRock registered its copyright on seven of the sets of documents with an effective date of registration on August 18, 2015, one of the sets of documents with an effective date of registration on November 17, 2015, and seven of the sets of documents with an effective date of registration on August 17, 2017. See [D.E. 37] 8; [D.E. 1-2, 1-3].

As for BlackRock's copyright infringement claim concerning copyrights registered in 2015, BlackRock should have brought those claims in Blackrock I. The claim involves the same parties and is based on the same transactions or series of transactions as in BlackRock I. In fact, BlackRock concedes that it knew of these alleged violations well before it filed its motion to amend. See [D.E. 37] 18. Moreover, BlackRock argued in BlackRock I that the new copyright infringement claim is based on the same transactions or series of transactions. Cf. Sensormatic Sec. Corp., 273 F. App'x at 256 (noting that the plaintiff "has taken fundamentally different positions in arguing two different motions"). Accordingly, the court grants Duke Energy's motion to dismiss concerning the

copyrights registered in 2015.

As for BlackRock's remaining copyrights, BlackRock did not register these copyrights until September 11, 2017. "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with [Title 17 of the United States Code]." 17 U.S.C. § 411(a); see Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, No. 17-571, 2019 WL 1005829, at *2 (U.S. Mar. 4, 2019). The United States Supreme Court recently held that "registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright." Fourth Estate Pub. Benefit Corp., 2019 WL 1005829, at *2; see La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1200–08 (10th Cir. 2005), abrogated in part on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010). Additionally, only certain classes of works, such as movies and musical compositions, are eligible for preregistration. See 17 U.S.C. § 408(f)(2); 37 C.F.R. § 202.16(b); Fourth Estate Pub. Benefit Corp., 2019 WL 1005829, at *3. Because Black Rock registered the remaining copyrights on September 11, 2017, BlackRock could not have brought the claim concerning those copyrights earlier even though the claim involves the same parties and the same transactions or series of transactions. Moreover, BlackRock has plausibly alleged that it did not know of the claim until after March 2015 and that the three-year statute of limitations does not bar the claim. Accordingly, BlackRock has not engaged in impermissible claim splitting as to the 2017 copyrights. Therefore, the court denies Duke Energy's motion to dismiss concerning the copyrights registered in 2017.

III.

Duke Energy seeks sanctions against BlackRock under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the court's inherent power [D.E. 26]. Rule 11 requires an attorney

8

to make a reasonable inquiry to determine that a complaint is well grounded in both fact and law, and is not filed for an improper purpose. See Fed. R. Civ. P. 11(b). In determining whether a complaint is well grounded in fact, "[a]n objective test is used to determine the reasonableness of a lawyer's prefiling investigation." In re Kunstler, 914 F.2d 505, 514 (4th Cir. 1990) (quotation omitted). A complaint's factual allegations fail to satisfy Rule 11(b)(3) when the attorney has not obtained any corroborating information before filing. See Morris v. Wachovia Sec., Inc., 448 F.3d 268, 277 (4th Cir. 2006). A legal argument violates Rule 11(b)(2) when it has "absolutely no chance of success under the existing precedent." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002) (quotation omitted); see Morris, 448 F.3d at 277. However, a legal position must be more than unsuccessful to warrant sanctions. See Hunter, 281 F.3d at 153–54. Attorneys must be allowed to seek good faith expansions and changes of the law. See Fed. R. Civ. P. 11(b)(2); Blue v. U.S. Dep't of Army, 914 F.2d 525, 534–36 (4th Cir. 1990). Sanctions are warranted only when "a reasonable attorney in like circumstances could not have believed his actions to be legally justified." Hunter, 281 F.3d at 153 (quotation omitted). Finally, a complaint violates Rule 11(b)(1) when an attorney files it without the central and sincere purpose of vindicating rights in court. See Kunstler, 914 F.2d at 518. Improper purposes include filing suit as leverage in separate proceedings, to obtain discovery for use in other proceedings, and to embarrass, intimidate, or harass. See id. at 519.

Under 28 U.S.C. § 1927, a court may award excess costs, expenses, and attorneys' fees incurred because "[a]ny attorney . . . multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Section 1927 "addresses a narrower field of conduct than that which may be addressed under the court's inherent authority because § 1927 permits sanctions only for bad-faith conduct that wrongfully multiplies proceedings." Six v. Generations Fed. Credit Union, 891 F.3d 508, 520 (4th Cir. 2018); see E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 522–23 (4th Cir.

9

2012); In re Crescent City Estates, LLC, 588 F.3d 822, 831 (4th Cir. 2009); DeBauche v. Trani, 191 F.3d 499, 511–12 (4th Cir. 1999); Chaudhry v. Gallerizzo, 174 F.3d 394, 410 (4th Cir. 1999); Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991); Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir. 1991); Blue, 914 F.2d at 544–45 (collecting cases); LaRouche v. Nat. Broadcasting Co., 780 F.2d 1134, 1140 (4th Cir. 1986); Blair v. Shenandoah Women's Ctr., Inc., 757 F.2d 1435, 1438 (4th Cir. 1985). A court also may impose sanctions, including attorneys' fees, under its inherent power when the court finds bad faith in the conduct of litigation. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); Brubaker, 943 F.2d at 1382 n.25.

As for BlackRock's negligent misrepresentation claim, BlackRock withdrew its claim in response to Duke Energy's Rule 11 safe-harbor letter. See [D.E. 40] 13. As for BlackRock's fraud claim, BlackRock withdrew that claim after Duke Energy moved to dismiss and for sanctions. See id. Having reviewed the entire record, the court concludes that BlackRock did not violate Rule 11 or act in bad faith concerning its negligent misrepresentation or fraud claims. In its discretion, the court declines to impose sanctions even though BlackRock filed the claims in the second case after being denied the ability to amend its complaint in BlackRock I. See id. at 13–17. Finally, as for BlackRock's copyright infringement claim, BlackRock did not violate Rule 11 or act in bad faith, and its conduct does not warrant sanctions. Accordingly, the court denies Duke Energy's motion for sanctions and denies Duke Energy's request for a hearing.

IV.

In sum, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss [D.E. 28], DENIES defendant's motion for sanctions [D.E. 26], and DENIES defendant's motion for a hearing [D.E. 30]. On December 18, 2018, BlackRock voluntarily dismissed Amec with

10

prejudice as part of a settlement agreement. See [D.E. 46]. Accordingly, the court DENIES as moot Amec's motion to dismiss [D.E. 31]. The clerk shall continue management of the case.

SO ORDERED. This 10 day of March 2019.

                                                         JAMES C. DEVER III
                                                         United States District Judge